IsGONZALES, Judge.
Mr. Lee Darbonne and Mr. Brent Gau-threaux filed separate but virtually identical suits against Exxon, McDonough Marine Service, United Tugs, Inc., Barge No. SBX 197, and the motor vessel M/V Dean Thomas, alleging that on or about April 30, 1989, Mr. Darbonne and Mr. Gauthreaux were working at a waste disposal site in St. Mary Parish owned and operated by Land Treatment Systems, Inc. (hereafter LTS), unloading materials from a barge in tow with the M/V Dean Thomas, under the dominion and control of Exxon, and owned and/or operated by Mc-Donough Marine Service, when they inhaled fumes from a hazardous substance which resulted in serious mental and physical injuries. The cases were consolidated by the trial court on March 1, 1994.
Mr. Darbonne and Mr. Gauthreaux alleged by original and amending petitions that the defendants, Exxon, McDonough Marine Service, United Tugs, Inc., Barge No. SBX 197, and the M/V Dean Thomas were absolutely, strictly and negligently hable to them for failure to transport hazardous waste in a safe and prudent manner; failure to properly label and warn of the dangers of working with the product; violating the laws and/or rules dealing with the handling and transportation of hazardous waste; failure to indicate on title documents the dangerous nature of the contents of the barge; wanton and reckless disregard for public safety in the storage, *600 handling and transporting of hazardous material; and generally failing to exercise care and caution commensurate with the circumstances.[2] Their wives, Charlene Darbonne and Karen Gauthreaux, sought damages for loss of society as a result of their husbands’ injuries.
^PROCEDURAL HISTORY OF THE CASE
On June 25,1991 Exxon filed a third-party demand against LTS, alleging that by virtue of Exxon’s contract with LTS, if the court should determine that the plaintiffs indeed sustained injuries, Exxon averred that such injuries were caused in whole or in part by the fault and/or negligence of LTS, and/or its employees or agents. Further, Exxon averred that by virtue of Exxon’s contract with LTS, LTS was obligated to “protect, indemnify, defend, and hold harmless Exxon Corporation for the proportionate fault/negligence of LTS in causing injury or illness to any person.”
On September 80, 1991, the trial court in its “REASONS FOR JUDGMENT” stated that after a hearing held July 25,1991, it was. granting Exxon leave to file a third-party demand against LTS, granting McDonough Marine Service’s motion for summary judgment, holding Exxon’s motion for partial summary judgment in abeyance pending a ruling by this court and granting the motion to strike plaintiffs’ demand for trial by jury.[3]
The plaintiffs applied for a supervisory writ with this court, and on November 22, 1991, this court denied the writ application, stating in part “[pjlaintiff has no right to a jury trial under La.C.C.P. art. 1732(6).”
On June 16, 1992, plaintiffs filed another motion for jury trial. By judgment dated July 7, 1992, the trial court denied the plaintiffs’ motion for jury trial and decreed that the plaintiffs’ claims (against the defendants in the principal action) were restricted to vessel negligence claims under 33 U.S.C. 905(b) and claims for punitive damages under federal maritime law.
The plaintiffs took writs to the Louisiana Supreme Court and on July 17, 1992, that court granted a supervisory and/or remedial writ, vacating the trial court’s judgment which had denied the motion for jury trial and remanding the case to the trial |s,court for a jury trial.
On June 8, 1992, LTS filed a motion for summary judgment seeking to dismiss Exxon’s third-party petition. The trial court in the preamble to its judgment dated July 15, 1992, noted:
... (1) that the plaintiffs in the principal action, as a matter of federal law, are precluded from asserting state law negligence or strict liability claims against the defendants in the principal action and (2) that the only claims which may be legally asserted by the plaintiffs in this proceeding against the defendants in the principal action are vessel negligence claims under 33 U.S.C. 905(b); and, furthermore, the Court having determined that there are no disputed issues of material fact, that the motion of Land Treatment Systems, Inc. for summary judgment should be granted as a matter of law ...
On July 27, 1992 Exxon filed a motion for new trial on LTS’s summary judgment. On November 29, 1993 Exxon filed an exception of no cause of action (alleging that Charlene [sic] Darbonne and Karen Gauthreaux had no cause of action for loss of consortium against Exxon) and a motion for partial summary judgment (alleging that there was no genuine issue of material fact in regard to plaintiffs’ demands for exemplary and/or punitive damages pursuant to general maritime law), which the trial court denied.
*601 By judgment dated December 14,1993, the trial court vacated its earlier denial of Exxon’s motion for partial summary judgment and its exception of no cause of action; and further, the trial court granted Exxon’s motion for partial summary judgment and its exception of no cause of action.
On January 13, 1994 this court granted in part and denied in part an application for supervisory writs filed by the plaintiffs. This court granted the writ and vacated “that part of the trial court’s December 14, 1993 ruling which grants the motion for a partial summary judgment and sustains the exception of no cause of action.”
On January 24,1994, a jury trial of the two consolidated suits was begun.[4] That 16same day, Exxon moved for a mistrial, and the trial judge granted the mistrial, stating in part “the Court through inability to properly perceive what was before it earlier made rulings that are contradictory to subsequent rulings of the Court.”
LTS then filed a petition for declaratory judgment on February 14, 1994. In this separate suit, LTS sought “a declaration of the rights of parties as to whether defendants, Darbonne and Gauthreaux, are longshoremen within the intendment of the LHWA,” and further “a declaration that Dar-bonne and Gauthreaux’s respective claims against Exxon Corporation are governed exclusively by 33 U.S.C.A. 905(b) and further that defendants, Darbonne and Gauthreaux, are precluded from asserting claims of any nature or kind arising under the law(s) of the State of Louisiana.” This action was consolidated with the Darbonne and Gauthreaux suits.[5]
After a trial on the declaratory action, the trial court signed a judgment on April 5, 1994, ruling in favor of LTS and declaring that 1) Lee Darbonne and Brent Gauthreaux were at all pertinent times longshoremen; 2) the only legal claims possessed by Darbonne and Gauthreaux against Exxon were those afforded by the Longshoremen Harbor Worker’s Compensation Act; 3) as a matter of law, Darbonne and Gauthreaux were precluded from asserting any rights or remedies afforded by state law against Exxon; and, 4) denying Exxon’s motion for new trial with reference to the court’s granting of LTS’s motion for summary judgment.[6]
The Darbonnes and the Gauthreauxs appealed the April 5, 1994 judgment and make the following assignments of error:
hi- The District Court erred as a matter of law in concluding that Messrs. Dar-bonne and Gauthreaux qualify as longshoremen within the meaning of the Long-shore & Harbor Worker’s Compensation Act, 333 U.S.C. § 901 et seq.;
2. The District Court erred as a matter of law in concluding that Section 905(b) of the Longshore & Harbor Workers’ Compensation Act (even if applicable) precludes petitioners’ state law claims against Exxon Corporation.
3. The District Court erred as matter of law in neglecting to conduct a jurisdictional and federal preemption analysis to decide the question of whether petitioners have and may assert Louisiana state law remedies and causes of action against Exxon Corporation for its fault and liability as the producer and owner of the toxic oilfield waste materials.
4. The District Court erred as a matter of law in granting a procedurally invalid, partial judgment, improperly disposing of *602 a portion of the claims asserted by petitioner against Exxon Corporation.
Exxon also appealed the April 5, 1994 judgment, stating in its petition for appeal:
By Judgment dated July 15, 1992, this Honorable Court granted Summary Judgment in favor of Land Treatment Systems, Inc., dismissing petitioner’s third-party demand with prejudice. A copy of the referenced Judgment is attached as Exhibit “A”. The July 15, 1992 Judgment rendered in favor of Land Treatment Systems, Inc. became final and appealable upon the Court’s April 5, 1994 entry of Judgment denying petitioner’s Motion for a New Trial. A copy of the Court’s April 5, 1994 Judgment is attached as Exhibit “B”.
[[Image here]]
Petitioner desires to appeal devolutively from the final judgment rendered in this action.
Exxon makes the following assignment of error.
This is a protective appeal. It is taken only to protect Exxon’s right to contractual indemnity in the event this Honorable Court would elect not to affirm in toto the judgment rendered by the Trial Court in the declaratory judgment action (94-CA-1937) instituted by Land Treatment Systems, Inc. Exxon does, however, respectfully submit that the Trial Court’s judgment is correct in every respect and should be affirmed. (Footnote omitted)
ANALYSIS
The crux of this case is pointed out in plaintiffs’ fourth assignment of error. This in an attempt to go forward under the guise of a declaratory judgment in order to actually get a partial summary judgment, which this court has already prohibited in this case by vacating the trial court’s earlier granting of a partial summary judgment.
lain Lofaso v. Granger, 574 So.2d 518 (La. App. 3rd Cir.1991), the plaintiff petitioned the court for declaratory relief requesting that the court find defendant in the course and scope of her employment at the time of the accident and, additionally, find the insurance carried by defendant’s employer covered plaintiff’s claims. A hearing on the declaratory relief was held, and after submission of depositions and arguments, the trial court granted judgment in favor of Lofaso and against the insurance company. The insurance company appealed from the judgment granting the plaintiffs request for declaratory relief without holding a full trial on the merits. The Lofaso court held:
“[Pjiecemeal trials are neither favored nor authorized by our jurisprudence.” Leteff v. Maryland Casualty Co., 82 So.2d 80, 84 (La.App. 1st Cir.1955), writ denied, Nov. 7, 1955 (cite not found). Declaratory relief may only be granted via ordinaira. [sic] See C.O.S.T. v. St. Landry Parish School Bd., 528 So.2d 1048 (La.App. 3[rd] Cir. 1988). A litigant may not, by filing one type of ordinary action within another type, i.e., filing a petition for declaratory relief in the same suit as an action for damages, deprive the defendant of a trial on the merits as to the declaratory action.
Insofar as the declaratory relief in this case encourages piecemeal litigation and discourages orderly proceedings, we find that the trial court, under these particular circumstances, erred in granting plaintiff a declaratory judgment rather than adjudicating the necessary factual issues in a trial of all the issues on the merits. (Footnote omitted)
574 So.2d at 520-21. See Lafayette Parish School Board v. Surrency, 583 So.2d 1206 (La.App. 3rd Cir.1991).
By virtue of the Louisiana Supreme Court’s ruling in this case that the plaintiffs are entitled to a jury trial, and the facts which the plaintiffs have pled, the plaintiffs have a right to present the matter to a jury to decide whether they are longshoremen under the facts of this case.
We find that this misuse of a declaratory judgment is legal error and is an abuse of discretion by the trial court. Therefore, we VACATE the declaratory judgment and REMAND the case to the trial court for further proceedings not inconsistent with this decision. Costs are assessed against LTS.

. We note that both Mr. Darbonne and Mr. Gau-threaux attempted to file fifth amending and supplemental petitions in which they sought punitive damages under La.C.C. art. 2315.3. By order dated June 15, 1992, the trial court granted Lee and Charlene Darbonne leave to file a fifth supplemental and amending petition; however, by order dated July 7, 1992, the trial court in part stated that it "ordered, adjudged and decreed that plaintiffs' Motions for Leave of Court to file their respective Fifth Supplemental and Amending Petitions be and are hereby denied.”

. No judgment in accord with these "REASONS FOR JUDGMENT” was found in the record; however, the trial court, in a judgment dated July 7, 1992, referred to these reasons for judgment as a "ruling.”

. We note that the only motion to consolidate the two cases that was found in the record was not signed by the trial court until March 1, 1994. Apparently the two suits were treated as a consolidated suit for some time before that order was signed. This was not assigned as error and is not before us now.

. We express no opinion as to the propriety of the declaratory judgment action brought by LTS to declare the rights of the plaintiffs in the other suits.

.We note that this judgment goes beyond the scope of a declaratory judgment by making a specific award of relief. La.C.C.P. art. 1871, Official Revision Comments. Further, "[t]he function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done.” Gulotta v. Cut-shafw, 258 So.2d 555, 558 (La.App. 1st Cir.1972), reversed on other grounds, 283 So.2d 482 (La. 1973).