649 So.2d 1042 (1994)
Deanna ANGELO, Individually and as the Representative of the Class of Descendants of Former Owners of Cheniere Ronquillo,
v.
John F. ALES, Secretary, Louisiana Department of Natural Resources and Louisiana Department of Natural Resources.
No. 94 CA 0320.
Court of Appeal of Louisiana, First Circuit.
December 22, 1994.
Writ Denied March 17, 1995.
*1043 John D. Rawls, New Orleans and Cesar J. Vazquez, Kenner, for appellant, Deanna Angelo.
Robert H. Carpenter, Jr., Baton Rouge, for appellee, John F. Ales, Secretary Louisiana Dept. of Natural Resources.
Charles D. Marshall, Jr. and Robert R. Lorio, New Orleans, amicus curiae.
Before GONZALES, FOGG and PARRO, JJ.
GONZALES, Judge.
In 1985, the Louisiana Legislature passed Act 245,[1] which provides in part as follows:
Section 1. Pursuant to authority of Louisiana Constitution Article VII, Section 14(B), the Legislature of Louisiana hereby declares that if the selection of certain swamp lands, more specifically Sections 9, 10, 11, 12, 14, 15, and 16 of Township 21 South, Range 26 East, Plaquemines Parish, pursuant to the Swamp-Lands Act of March 2, 1849, 9 Stat. 352, and the subsequent transfer of said properties to the Board of Levee Commissioners of the Buras Levee District on May 14, 1895, May 10, 1928, and October 9, 1928 is declared or constituted, in a final judgment in a court of competent jurisdiction, as having been an expropriation or purchase under the threat of expropriation, and if a court of competent jurisdiction declares in a final judgment that the ownership of such property vested in persons and or entities other than the United States government, the state of Louisiana, or their political subdivisions prior to 1850, then the public and necessary purpose which may have supported any such expropriation has ceased to exist only insofar as it may have affected the ownership of any private property or any private mineral rights, to the above described swamp lands. The Legislature of Louisiana, subject thereto, orders the Board of Levee Commissioners of the Buras Levee District (herein referred to as "Board"), to return the ownership of said property to the former private owners of record or their successors from whom any such private property was acquired by expropriation. Neither the provisions of this Act nor any actions pursuant to this Act shall affect the title to land the title of which is the subject of litigation on the effective date of this Act, until the disposition of said litigation.
The validity of any such title in any private person is to be established in the manner provided by law.
Section 2. The secretary of the Department of Natural Resources shall have rulemaking and procedure-making authority *1044 consistent with the Administrative Procedure Act, R.S. 49:950, et seq., for the purpose of establishing procedures and guidelines for the receipt and evaluation of applications, notification of applicants, review of denials by hearings, relaxation of technical rules of evidence, settlement and distribution of funds for successful applications, and any other rules and procedures reasonably necessary for the orderly implementation of the return ordered herein. The secretary shall proceed immediately upon the effective date of this Act with steps necessary for the development and adoption of rules and procedures to begin the implementation of the provisions of this Act by January 1, 1986.
Subsequent to the enactment of Act 245 of 1985, this case began with the filing of a petition for declaratory judgment in the Twenty-Fifth Judicial District Court, Parish of Plaquemines which petition was captioned, "In The Matter Of: Members Of A Class Of Descendants Of The Former Owners Of Cheniere Ronquillo." The suit was brought by Deanna Angelo, "individually and as representative of the class of descendants of the former owners of the Cheniere Ronquillo."[2] No party was made a defendant in that action. The petition prayed for judgment as follows:
I.
Declaring the plaintiff as a member of the class of direct decendants [sic] of the owners of Cheniere Ronquillo and as a representative of said class and proper party to bring this action;
II.
Declaring that the nomination of subject property under the Swamp Land Act, the confirmation of the title to the subject property to the State of Louisiana by the United States and the subsequent transfer of subject property by the State of Louisiana to the Buras Basin Levee District was an expropriation of the property of the owners of Cheniere Ronquillo.
III.
Declaring that the title to subject property was vested in Francois Moreau, Raymond Robert, Francois Chetez, Augustine Bon, Antoine Fleury Bon, Joseph LeBrun, Claude LeBrun, Jules Bremy, Claude Joseph Clement, and Francois Bremmy prior to 1850 and was therefore not vested in the State of Louisiana or the United States Government or their political subdivisions prior to 1850.
After a highly unusual ex parte hearing, the Twenty-Fifth Judicial District Court ruled in favor of Ms. Angelo and issued a declaratory judgment on August 29, 1988 which stated:
IT IS HEREBY DECLARED that the selection by the State of Louisiana of the Cheniere Ronquillo pursuant to the Swamp-Lands Act of March 2, 1849, 9 Stat. 352, and the subsequent transfer of this property to the Board of Levee Commissioners of the Buras Basin Levee District on May 14, 1895, May 10, 1928, and October 9, 1928, was an expropriation.
IT IS FURTHER DECLARED that the ownership of the Cheniere Ronquillo vested in persons other than the United States Government, the State of Louisiana or their political subdivisions prior to 1850.
IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff, Deanna Angelo is a direct descendant of an owner of the Cheniere Ronquillo and is a proper party to bring this action; that this matter is properly brought as a class action and as such, Deanna Angelo provides adequate representation for the absent members of the class.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that reasonable cost of litigation and attorney's fees shall be awarded in accordance with a plan to be submitted by Martha R. Sassone, attorney for the class, within ninety (90) days from the date of this judgment. The plan to be submitted for court approval shall also include a plan for notice to prospective members of the class, and a plan for the prospective members of the class to elect into the class.
*1045 On February 19, 1992, the Twenty-Fifth Judicial District Court signed an "Order Referring This Matter To The Secretary of the Louisiana Department of Natural Resources,"[3] which ordered in part that "this matter be referred to the Secretary of the State of Louisiana Department of Natural Resources for further action by him pursuant to Section 2 of the said Act 245, Acts of Louisiana 1985, said action specifically to include a determination of the identities of the true descendants of the former owners of the Cheniere Ronquillo."
This order was sent to the Secretary of the Department of Natural Resources, who responded by letter dated April 8, 1992, stating in part:
It is the opinion of both this office and the Attorney General's office that no action is warranted by the Department of Natural Resources under Section 2 of Act 245 of 1985 because the Declaratory Judgment rendered in the above numbered and captioned matter on August 29, 1988 is invalid. The referenced action was obviously initiated for the purpose of taking from the Plaquemines Parish Government lands which were transferred to its predecessor in title by the State of Louisiana. However, the Plaquemines Parish Government was never made a party to those proceedings; and, consequently, was denied the opportunity to defend its title to the lands [in] controversy.
Thereafter, Ms. Angelo filed a petition for writ of mandamus in the Nineteenth Judicial District Court "individually and as representative of the class of descendants of the former owners of the Cheniere Ronquillo," asking that the Department of Natural Resources and its Secretary:
[P]roceed with steps necessary for the development and adoption of rules and procedures to begin the implementation of the provisions of Act 245, Acts of Louisiana 1985, to demand and require a thorough accounting from the Board of Levee Commissioners of the Buras Levee District concerning all revenues received from that Board from the affected property, and to begin steps to notify affected persons, or to show cause to the contrary at a date and time to be fixed by this Court in accordance with Articles 3782 and 3865, Louisiana Code of Civil Procedure, and, after appropriate proceedings are held, to issue its Writ Absolute directing the Defendants, and all of them, to implement the provisions of the said Act by a date certain to be set by this Court, and for the costs of this proceeding.
On August 5, 1992, the Department of Natural Resources (DNR) and its Secretary filed a peremptory exception raising the objection of no right of action and a dilatory exception raising the objection of prematurity. The trial court sustained the exception raising the objection of prematurity and issued oral reasons on August 6, 1992. The reasons for judgment provide in part as follows:
It's absolutely, in the court's opinion, unnecessary for the Department of Natural Resources to start to promulgate any rules, standards, until there has been a judicial determination made as to whether or not this swamp land that's described in those various sections fall [sic] under the purview of section 1 in becoming private.
So, until the requirements of section 1 have been met, it's the court's opinion that the Secretary of Natural Resources would be spinning his wheels, doing a vain and useless thing.
So, the court will not grant the mandamus until there has been compliance with Section 1. Counsel says there has been a compliance with Section 1, look at the judgment that was entered by the judge in Plaquemines Parish.
Counsel was getting ready to tell me that I couldn't do this and that; but we know that under 1880 of the Code of Civil Procedure, that to have a declaratory judgment there has got to be certain parties whose interests are involved. In this instance, all the petition did, it was filed, naming that these people are heirs and that's it. No one contested it because certainly no one was made a party defendant to it.

*1046 So this court does not feel that it has before it a proper judgment from a court of competent jurisdiction, a final judgment that's necessary under Section 1 of Act 245 of 1985, and, accordingly, will grant the exception of prematurity, which, under the Code of Civil Procedure, means that the suit is dismissed, without prejudice, until such time as Section 1 has been complied with.
Ms. Angelo applied for a writ of certiorari and mandamus and/or a supervisory writ, which was denied by this Court on April 7, 1993. This Court, finding that the trial court judgment sustaining the dilatory exception raising the objection of prematurity was a final appealable judgment, ordered the case remanded to the trial court with instructions to grant Ms. Angelo an appeal. This appeal was granted, and Ms. Angelo raised three assignments of error.
1. Whether the trial court erred in ruling that the mandatory duties of the Secretary and DNR under Act 245, Acts of Louisiana 1985, are dependent upon the prior entry of a valid declaratory judgment.
2. Whether the trial court erred by entertaining and granting a collateral attack on a final judgment entered by another district court.
3. Whether the trial court erred in applying Book II of the Louisiana Code of Civil Procedure to the declaratory judgment proceeding ordered by Act 245.

ASSIGNMENTS OF ERROR NO. 2 AND NO. 3
Ms. Angelo argues that "[e]ven if Act 245 requires that a Declaratory Judgment be entered prior to any action being taken by the Secretary and Department of Natural Resources, that requirement has been fulfilled. On August 29, 1988, after hearing a thorough prima facie case the Twenty-Fifth Judicial District Court entered its Declaratory Judgment declaring that: an expropriation took place; ownership of the Cheniere Ronquillo vested in persons other than the State or Federal Governments or their political subdivisions prior to 1850; this Appellant is a direct descendant of one of the prior owners; and this Appellant provides adequate representation for the class of heirs." Ms. Angelo argues that the Nineteenth Judicial District Court refused to accept the declaratory judgment, and instead "entertained and granted a collateral attack on it[.]"
Further, Ms. Angelo argues that the trial court erred in applying La.C.C.P. art. 1880, which provides in pertinent part that "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Ms. Angelo cites a portion of La. C.C.P. art. 851, which provides that "The articles in this Book govern ordinary proceedings, which are to be used in the district courts in all cases, except as otherwise provided by law [,]" (emphasis added) to argue that the legislature in La.C.C.P. art. 851 reserved to itself the right to apply a particular method of proceeding in any given case, and "[i]t exercised that right in Section 1 of Act 245;" therefore, she argues that La.C.C.P. art. 1880 does not apply to her declaratory judgment proceeding.
Louisiana Code of Civil Procedure article 851, found in Book 2 of that Code, provides in full:
Three different modes of procedure are used in civil matters in the trial courts of this state: ordinary, summary, and executory.
The articles in this Book govern ordinary proceedings, which are to be used in the district courts in all cases, except as otherwise provided by law.
Summary and executory proceedings are regulated by the provisions of Book V.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La.C.C. Art. 9. We find it clear and unambiguous that the La.C.C.P. art. 851 provides for three different modes of procedure, determined by whether the civil matter is ordinary, summary, or executory. Therefore, no further interpretation need be made in search of the intent of the legislature. Louisiana *1047 Code of Civil Procedure article 1880, found in Title 6 of Book 2, pertains to the parties to the ordinary proceeding involving declaratory judgments and provides as follows:
When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In a proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard. If the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard.
Had the legislature wished to exempt declaratory judgment proceedings under Act 245 of 1985 from the requirements for declaratory judgments under La.C.C.P. art. 1880, it could have done so by clearly stating such intention in Act 245.[4] The legislature did not do so, and further, the legislature stated in Section 1 of Act 245 that "[t]he validity of any such title in any private person is to be established in the manner provided by law." Clearly, in this case, although declaratory relief was sought by Ms. Angelo, she failed to follow the mandate of La.C.C.P. art. 1880 which requires that all persons who would be affected by the declaration be made parties to the proceeding. No parties were named, served, confronted with any evidence or given an opportunity to appear.
Further, La.C.C.P. article 2002 provides in pertinent:
A final judgment shall be annulled if it is rendered:
....
(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken;
....
Except as otherwise provided in Article 2003, an action to annul a judgment on these grounds may be brought at any time.
The nullity of Ms. Angelo's declaratory judgment is even more obvious than the invalid judgments envisioned by La.C.C.P. art. 2002(2) because, rather than naming a defendant and then failing to serve that defendant with process, the petition fails to even name a defendant. It meets none of the requirements for a declaratory relief under La. C.C.P. art. 1880. Therefore, Ms. Angelo's declaratory judgment has no effect on the Department of Natural Resources, the Secretary of the Department of Natural Resources, or anyone else. Because this judgment is an absolute nullity, a collateral attack upon it such as this one is permissible. See Lewis v. Macke Building Services, Inc., 524 So.2d 16, 18 (La.App. 5th Cir.), writ denied, 532 So.2d 131 (La.1988). These assignments of error have no merit.

ASSIGNMENT OF ERROR NO. 1
Ms. Angelo argues that Section 2 of Act 245, by use of the word "shall," mandates that the Secretary "proceed immediately upon the effective date of this Act with steps necessary for the development and adoption of rules and procedures to begin the implementation of the provisions of this Act by January 1, 1986." She argues that the trial court erred in interpreting Section 2 of Act 245 to be contingent upon the entry of a valid judgment under Section 1 of Act 245. She *1048 further argues that "the Legislature in its wisdom decided that the first step would be a Declaratory Judgment on behalf of the potential Plaintiffs to determine whether a prima facie case could even be made for an expropriation. Simultaneously, the Legislature ordered the Defendant to begin immediately to set up rules and regulations so that within six months he could start identifying who the potential Plaintiffs and the potential Defendants really are in the Plaquemines Parish case."
A careful reading of Section 2 of Act 245 of 1985 shows that "The secretary shall proceed immediately upon the effective date of this Act with steps necessary for the development and adoption of rules and procedures to begin the implementation of the provisions of this Act by January 1, 1986." (Emphasis added.) The meaning of "steps necessary for the development and adoption of rules and procedures" is not clear and the Act gives no further details. It appears that these "steps" could be fulfilled by the hiring of an attorney to draft the necessary rules and procedures, or by the Secretary of the Department of Natural Resources jotting down a list of things to be done to implement Act 245. In any event, Act 245 provides in Section 1 that "The validity of any such title in any private person is to be established in the manner provided by law." Ms. Angelo cannot, by means of an ex parte action in a trial court, have herself declared a rightful heir to the Cheniere Ronquillo, and then demand that the Secretary of the Department of Natural Resources begin steps to have the Cheniere Ronquillo returned to her under Act 245. Ms. Angelo has failed to establish, in the manner provided by law, the validity of any title in her name as required by Section 1 of Act 245 of 1985. Therefore, this mandamus action by Ms. Angelo against the Department of Natural Resources and its Secretary to begin the implementation of Act 245 of 1985 is premature. This assignment of error has no merit.

DECREE
For the foregoing reasons, the judgment of the trial court is AFFIRMED. Costs are assessed against the plaintiff-appellant, Ms. Angelo.

APPENDIX A

ACT No. 245 of 1985

AN ACT
To declare that the public and necessary purpose which may have originally supported the expropriation of certain property in the parish of Plaquemines, known as Cheniere Ronquillo, located in Sections 9, 10, 11, 12, 14, 15, and 16 of Township 21 South, Range 26 East has ceased to exist, to order the return of certain property from the Board of Levee Commissioners of the Buras Levee District, including mineral rights, acquired therefor by expropriation under certain terms, conditions, and procedures, and subject to certain rights, and to provide for related matters.
Notice of intention to introduce this Act has been published as provided by Article III, Section 13 of the Constitution of Louisiana.
Be it enacted by the Legislature of Louisiana:
Section 1. Pursuant to authority of Louisiana Constitution Article VII, Section 14(B), the Legislature of Louisiana hereby declares that if the selection of certain swamp lands, more specifically Sections 9, 10, 11, 12, 14, 15, and 16 of Township 21 South, Range 26 East, Plaquemines Parish, pursuant to the Swamp-Lands Act of March 2, 1849, 9 Stat. 352, and the subsequent transfer of said properties to the Board of Levee Commissioners of the Buras Levee District on May 14, 1895, May 10, 1928, and October 9, 1928 is declared or constituted, in a final judgment in a court of competent jurisdiction, as having been an expropriation or purchase under the threat of expropriation, and if a court of competent jurisdiction declares in a final judgment that the ownership of such property vested in persons and or entities other than the United States government, the state of Louisiana, or their political subdivisions prior to 1850, then the public and necessary purpose which may have supported any such expropriation has ceased to exist only insofar as it may have affected the ownership of any private property or any private mineral rights, to the above *1049 described swamp lands. The Legislature of Louisiana, subject thereto, orders the Board of Levee Commissioners of the Buras Levee District (herein referred to as "Board"), to return the ownership of said property to the former private owners of record or their successors from whom any such private property was acquired by expropriation. Neither the provisions of this Act nor any actions pursuant to this Act shall affect the title to land the title of which is the subject of litigation on the effective date of this Act, until the disposition of said litigation.
The validity of any such title in any private person is to be established in the manner provided by law.
Section 2. The secretary of the Department of Natural Resources shall have rule-making and procedure-making authority consistent with the Administrative Procedure Act, R.S. 49:950, et seq., for the purpose of establishing procedures and guidelines for the receipt and evaluation of applications, notification of applicants, review of denials by hearings, relaxation of technical rules of evidence, settlement and distribution of funds for successful applications, and any other rules and procedures reasonably necessary for the orderly implementation of the return ordered herein. The secretary shall proceed immediately upon the effective date of this Act with steps necessary for the development and adoption of rules and procedures to begin the implementation of the provisions of this Act by January 1, 1986.
Section 3. The board shall provide a thorough accounting to the secretary of the Department of Natural Resources, or his designee, concerning all revenues received from the affected property. The information so provided shall be made available to applicants. The board shall comply with the spirit and letter of the rules and regulations adopted and promulgated by the secretary of the Department of Natural Resources.
Section 4. The secretary of the Department of Natural Resources shall begin steps by January 1, 1986, to notify affected persons.
Section 5. The return of property by the board to the owners or their successors shall be subject to all servitudes and rights-of-way, whether acquired by expropriation or otherwise, or surface or mineral leases, or other valid contracts executed prior to the effective date of this Act. Any deed whereby any property is returned shall state that such property is subject to such rights. Any party to a contract in effect on the effective date of this Act with the board concerning property affected by this Act shall be entitled to make payments and give all notices required or permitted under such contract to the secretary until the title to the property affected has been transferred. When such contracts provide for renegotiation of rent between any person and the board, or provide that any person may seek approval by the board, such person shall be entitled to renegotiate such rent or to seek and obtain such approval from the secretary until the title to the property affected has been transferred. Any sum deposited with the secretary pursuant to this Act which represents rent, royalty, or other sum attributable to land being returned, shall be paid by the secretary to the appropriate persons.
Section 6. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided in Article III, Section 18 of the Constitution of Louisiana.
Section 7. Should it be determined that the government of the United States is the person or entity to whom a tract of property would otherwise be returned under the provisions of this Act, that property shall not be transferred and shall remain in the possession and ownership of the state or its successor in title.
Section 8. The provisions of this Act shall not apply to state owned water bottoms.
Section 9. Notwithstanding any other provisions herein, nothing herein contained shall pertain to or affect the ownership or title to other lands of any levee district or the Buras Levee District or its successors or *1050 assigns or any other lands selected pursuant to the Swamp Land Acts.
NOTES
[1] The full text of Act 245 of 1985 is found in Appendix A.
[2] Deanna Angelo was added as a plaintiff by an amended petition.
[3] No legal basis has been cited for this procedure.
[4] An example of an exception to the procedural articles governing an ordinary proceeding is found in La.R.S. 13:5105, which provides:

A. No suit against a political subdivision of the state shall be tried by jury. Except upon a demand for jury trial timely filed in accordance with law by the state or a state agency or the plaintiff in a lawsuit against the state or state agency, no suit against the state or a state agency shall be tried by a jury.
B. Whenever a jury trial is demanded by the state, state agency, or the plaintiff in a lawsuit against the state or a state agency, the party demanding the jury trial shall pay all costs of the jury trial including the posting of a bond or cash deposit for costs in accordance with Code of Civil Procedure Articles 1733 through 1734.1, inclusive.