694 So.2d 316 (1996)
STATE of Louisiana, Through the LOUISIANA RIVERBOAT GAMING COMMISSION
v.
LOUISIANA STATE POLICE RIVERBOAT GAMING ENFORCEMENT DIVISION.
No. 95 CA 2355.
Court of Appeal of Louisiana, First Circuit.
August 21, 1996.
*317 Jenifer Schaye, Thomas A. Warner, III, Julie Collins, Office of Attorney General, Baton Rouge, for Plaintiff-Appellant Louisiana Riverboat Gaming Commission.
James C. Dixon, Willie E. Broome, Baton Rouge, for Defendant-Appellee Riverboat Gaming Enforcement Division.
Charles S. Lambert, Jr., Baton Rouge, for Intervenor-Appellee Capitol House Preservation Company, L.L.C.
Before SHORTESS, PARRO and KUHN, JJ.
PARRO, Judge.
The Louisiana Riverboat Gaming Commission ("Commission") brought this action for a declaratory judgment, seeking validation of its rules and naming the Louisiana Riverboat Gaming Enforcement Division ("Division") as a defendant. The Division's response alleged certain of the regulations were not valid because they exceeded the Commission's statutory authority and usurped authority granted to the Division. Lady Luck Casino Baton Rouge, Inc. ("Lady Luck") intervened, also claiming many of the rules were invalid, particularly those dealing with applications, procedures, and fees assessed for certain "certificates" of approval from the Commission. Capitol House Preservation Company, L.L.C. ("Capitol House") is the successor in interest to intervenor Lady Luck.
The Commission and the Division filed exceptions of no right of action against Capitol House and the Division also filed an exception of no cause of action against it, all of which were denied by the trial court. The Commission and Capitol House filed cross motions for summary judgment on the validity of the regulations promulgated by the Commission. The trial court found several major sections of the regulations, including those assessing application fees, exceeded the statutory authority of the Commission and were null, void, and without effect. The trial court prohibited any further application of the regulations and ordered the Commission to refund any fees paid to it by Capitol House or its predecessor in interest. The Commission appeals the trial court's ruling on its exception and the judgment which decreed its regulations were null and ordered it to refund fees to Capitol House. We affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
The Commission filed its petition for a declaratory judgment in April 1994 and later amended to name the Division as a defendant. Lady Luck intervened, claiming it had a vital interest in the case because its application for a certificate of preliminary approval had been denied by the Commission and its license to conduct riverboat gaming was pending before the Division. It requested the court to declare inoperative any of the Commission's rules which the court might find invalid.
This case was temporarily side-tracked by a petition for a declaratory judgment filed in this proceeding by Doug Moreau, District Attorney for East Baton Rouge Parish ("the District Attorney"), intervening on behalf of the State of Louisiana and seeking to have many of the Commission's regulations declared null and void. In an amended pleading, the District Attorney named as defendants all forty-seven entities which had applied for riverboat gaming licenses from the Division or for any form of approval from the Commission. The Commission opposed the District Attorney's action, but the trial court ruled his intervention on behalf of the State was proper. Upon the Commission's application, this court ordered issuance of a writ of certiorari and stayed the proceedings pending its decision. In January 1995 this court held the District Attorney did not have authority to institute an action on behalf of the State of Louisiana; *318 and in June 1995 the Louisiana Supreme Court denied writs.[1]
Not easily dissuaded, the District Attorney filed another petition to intervene in the proceedings, this time in his official capacity, claiming an interest in the case because of the impact the decision would have on his constitutionally mandated duties. This petition did not name any defendants, but requested the trial court to order the joinder of "all persons who applied to the Division for riverboat gaming operators' licenses and all persons who applied to the Commission for any sort of approval." The District Attorney's intervention was again opposed by the Commission and in September 1995, the trial court ruled he had no right of action and dismissed the petition.[2]
While the District Attorney's actions were still moving toward resolution, the trial court allowed Capitol House to be substituted for Lady Luck as its successor in interest. The Commission and the Division filed exceptions claiming Capitol House had no right of action to intervene in the proceeding. The Division also filed an exception of no cause of action against Capitol House. The trial court ruled in favor of Capitol House and against the Commission and the Division on their exceptions of no right of action and the Division's exception of no cause of action. The Commission's appeal of this ruling is one of the issues before this court.[3]
Capitol House and the Commission filed cross motions for summary judgment on the issue of the validity vel non of the Commission's regulations. In its written reasons for judgment, the trial court stated:
[T]he court finds that the Commission has exceeded its authority as granted in the Act. The Commission is given the authority [to] enact rules and promulgate them. They have no authority to enforce these rules nor grant any authorizations nor approvals within these rules. Even if they have the power to accept applications for routes, boat design, etc. the Commission has overstepped its authority in the manner of granting these approvals. They should act only after the Division has granted a license to an operator. The Commission has also exceeded its authority by imposing fees. There is no authorization for the Commission to impose or collect any fees, whatever.
For these reasons, the court finds La. R.S. 4:301 through 331 inclusive, 503 through 509 inclusive, 701-705 inclusive, and 717 to be null, void, and without effect and prohibits any further application of them. Further, the court finds that any fees paid by Capitol House Preservation Company, L.L.C. or its predecessor in interest are to be refunded to them.
The Commission has also appealed the judgment rendered pursuant to these written reasons.[4]
While this case was pending before this court, the Louisiana legislature addressed the status of the various entities charged with oversight of gaming. By Act 7 of the First Extraordinary Session of 1996, the legislature enacted the provisions of La.R.S. 27:1 et seq., the Louisiana Gaming Control Law ("the Gaming Control Law"), which established the Louisiana Gaming Control Board ("the Board"). The Gaming Control Law became effective May 1, 1996. In accordance with its provisions, the Board became the successor to both the Commission and *319 the Division, and the Attorney General was designated to represent the Board in all legal proceedings.[5]
This legislation might have mooted the issues in this proceeding, except the Gaming Control Law also stated any pending legal proceeding involving any of the prior entities was to continue in the name of the Board.[6] LSA-R.S. 27:31(C). It also transferred to the Board all administrative rules and regulations promulgated by the prior entities, which "shall be considered valid and remain in effect until repealed" by the Board. LSA-R.S. 27:31(E). Accordingly, the issues appealed to this court are extant.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria as those governing the district court's consideration of whether summary judgment is appropriate. Schroeder v. Bd. of Sup'rs of Louisiana State Univ., 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981).
There are no factual disputes in this matter. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. Gonzales v. Xerox Corp., 320 So.2d 163, 165 (La.1975); Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144, 152 (La.App. 3rd Cir.), writ denied, 565 So.2d 450 (La.1990).

VALIDITY OR INVALIDITY OF THE COMMISSION'S RULES
The Commission contends the trial court erred in finding the Commission exceeded its authority, in holding Sections 301-331 inclusive, 503-509 inclusive, 701-705 inclusive, and Section 717 of its rules are null, void, and without effect, and in prohibiting any further application of these rules.
The Commission's rules were promulgated to implement the Louisiana Riverboat Economic Development and Gaming Control Act ("the Act"), LSA-R.S. 4:501, et seq. This legislation, effective July 18, 1991, created the Commission by LSA-R.S. 4:510(A) and the Division by LSA-R.S. 4:515 and described their respective duties, powers, and responsibilities. The Commission's rules at issue in this case are designated as Title 42, Part XIII.101, et seq. of the Louisiana Administrative Code and are published in Volume 19, No. 7 of the Louisiana Register at pp. 851-61.
Our review of the record in this proceeding, and particularly our analysis of the above-cited statutes and rules, compels us to conclude the trial court correctly interpreted and applied the law; we find no error in its conclusions. The trial judge gave extensive and well-reasoned findings in his written reasons for judgment. We adopt those reasons as our own as they pertain to the issue of the invalidity of certain of the Commission's rules, and affirm as modified in the trial court's judgment. See "Written Reasons for *320 Judgment" dated September 28, 1995, and "Judgment" rendered and signed October 5, 1995, attached.

EXCEPTION OF NO RIGHT OF ACTION
The Commission argues the trial court erred in overruling its exception of no right of action seeking to have the Capitol House intervention dismissed. The gist of the Commission's argument is that Capitol House, as a party adversely affected by a decision of the Commission, must proceed by way of an appeal of that decision.[7] Until its appeal has run its course, Capitol House cannot demonstrate that application of the Commission's rules to it have caused or will result in irreparable injury, which is required by the provisions of the Administrative Procedure Act ("the APA") governing declaratory judgment actions.[8] The Commission contends because only it or the Division was authorized to bring this action for declaratory judgment under the enabling legislation, the rights of Capitol House to seek similar relief are limited to the procedure outlined by the APA.[9]
Capitol House argues that because it did not initiate this action for declaratory judgment, the APA does not apply to this proceeding. This action was brought by the Commission under a statute which specifically calls for it to be governed by the Louisiana Code of Civil Procedure, which does not have the prerequisite showing of irreparable injury.[10] Capitol House maintains its intervention is mandated by LSA-C.C.P. art. 1880, since it has an interest which would be affected by the declaration.
The exception of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. LSA-C.C.P. art. 927(5). This exception assumes the petition states a valid cause of action for some person and questions whether the party against whom the exception is brought has a legal interest in the subject matter of the litigation. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015, p. 5 (La. 11/30/94), 646 So.2d 885, 888.
The question of whether Capitol House has a real and actual interest in challenging the Commission's rules is controlled by the Louisiana Supreme Court's conclusion in the Paddlewheels case. There the court concluded that since Paddlewheels had a pending application for a license to berth or use a docking facility for riverboat gaming, it had a real and actual interest in challenging the statutory provisions which effectively prevented it from obtaining a license, should one become available. Similarly, when Lady Luck intervened in this proceeding, it had a license hearing pending before the Division, but did not have a "certificate" from the Commission and feared the Commission's requirements would operate to its disadvantage in the licensing process. Indeed, while this action was wending its way through the courts, the Division licensed only those 15 applicants which already possessed a "certificate" from the Commission. As the court noted in Paddlewheels, even if all of the currently available licenses are in use, the statutes might be *321 amended to increase the limit or a current operator might relinquish its license. This observation is equally applicable to Capitol House in this case.
However, because this case involves an intervention, the requirement of a real and actual interest must be examined in conjunction with the statutory provisions permitting a party to intervene. Article 1091 of the Louisiana Code of Civil Procedure states, in pertinent part:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties....
The court in Amoco Production Co. v. Columbia Gas Transmission Corp., 455 So.2d 1260, 1263 (La.App. 4th Cir.), writs denied, 459 So.2d 542 & 543 (La.1984), examined this issue, and particularly the official revision comments which state, "a third person having a justiciable right related to or connected with the object of the principal suit may enforce that right through intervention." LSA-C.C.P. art. 1091, Official Revision Comment (c). The court concluded:
We are of the opinion that a "justiciable right" as used in interpreting Article 1091 means the right of a party to seek redress or a remedy against either plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it. If that right does exist, then, in order to intervene it must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights. This connexity requirement is essential.
Id. at 1264 (footnote omitted). In the context of this proceeding, the remedy sought by Capitol House is a declaration that certain of the Commission's rules are invalid. These rules require certain "certificates" of approval from the Commission as a condition to conducting riverboat gaming operations and the rules are also used to determine whether or not an applicant obtains those "certificates." Capitol House, as the successor in interest to Lady Luck, is directly affected by the application of those rules to its attempts to gain a riverboat gaming license, and asserts this interest against the Commission's interest in having those rules declared valid. We conclude the intervention is proper.
An equally intriguing question is raised by the interaction between the APA and the Louisiana Code of Civil Procedure in this particular case. In Bueto v. Video Gaming Division, 94-0334 (La.App. 1st Cir. 3/4/94), 637 So.2d 544, this court reviewed an action for declaratory judgment which was ostensibly brought under the auspices of both LSA-C.C.P. arts. 1871-72 and LSA-R.S. 49:963. Since the requirements for declaratory judgments are not the same in these articles, the applicable statutes regulating video poker were examined. This court determined that because a person who had been denied a license was entitled to a hearing conducted in accord with the APA, it followed that all related hearings and court proceedings should be done under the auspices of the APA, and the Code of Civil Procedure articles were inapplicable. Id. at 546. The Bueto case would be dispositive of the issue in this case, since the Act also provides for appeals to the district court under the auspices of the APA. LSA-R.S. 4:548. However, we are faced with a specific exception in the portion of the statute under which this particular action was brought; it states very clearly that such an action for declaratory judgment is to be governed by the Louisiana Code of Civil Procedure. LSA-R.S. 4:556(A). There was no similar provision in the video poker statutes. In Angelo v. Ales, 94-0320 (La.App. 1st Cir. 12/22/94), 649 So.2d 1042, writ denied, 95-1076 (La. 3/17/95), 651 So.2d 274, this court stated in connection with the application of the procedural articles to the case,
Had the legislature wished to exempt declaratory judgment proceedings under Act 245 of 1985 from the requirements for declaratory judgments under La.C.C.P. art. 1880, it could have done so by clearly stating such intention in Act 245. The legislature did not do so....
Id. at 1047. Unlike the Angelo case, in the statute under which this action was brought, the legislature did clearly state which procedural articles are to be applied to this particular *322 declaratory judgment action, i.e., the Louisiana Code of Civil Procedure.
Accordingly, we find Capitol House has a real and actual interest in challenging certain of the rules for which the Commission sought a declaration of validity, and its intervention to assert its interest was proper. We also find its right to assert that interest was not limited to the procedures specified by the APA because this action was brought under a statute which specifies it is to be handled in accordance with the provisions of the Louisiana Code of Civil Procedure. The trial court did not err in overruling the Commission's exception of no right of action, and we affirm its action with regard to this issue.

ORDER TO REFUND FEES
The Commission argues the trial court erred in finding the Commission exceeded its authority and then holding there is no authorization for the Commission to impose or collect any fees, whatever, and ordering any fees paid by Capitol House or its predecessor in interest to be refunded to it. The first portion of this argument was accurately addressed by the trial court in his written reasons for judgment, and we agree there is no authority in the Act for the Commission to charge any fees; only the Division has that authority.
However, we disagree with the next step taken by the trial court in ordering the refund of fees paid by Capitol House. As noted by this court in Darbonne v. Exxon Corp., 94-1935, p. 8 (La.App. 1st Cir. 6/23/95), 657 So.2d 598, 601, n. 6:
[T]his judgment goes beyond the scope of a declaratory judgment by making a specific award of relief. La.C.C.P. art. 1871, Official Revision Comments. Further, "[t]he function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done." Gulotta v. Cutshaw, 258 So.2d 555, 558 (La.App. 1st Cir.1972), reversed on other grounds, 283 So.2d 482 (La.1973).
An action for declaratory judgment pursuant to Article 1871 can include "further relief" under certain circumstances. In Chauvet v. City of Westwego, 599 So.2d 294 (La.1992), the supreme court held a request for a mandatory injunction ordering payment of certain past due benefits was an appropriate method of demanding "further relief" in a declaratory judgment action challenging the validity of a state statute purporting to terminate those benefits. And in Trans Louisiana Gas Co. v. Louisiana Ins. Guar. Ass'n, 93-2287 (La.App. 1st Cir. 3/3/95), 652 So.2d 686, 689, writ not considered, 95-0853 (La. 4/21/95), 653 So.2d 555, this court stated, "Further or supplemental relief may be granted, if demanded, and after notice and hearing. LSA-C.C.P. art. 1878." However in that case, the plaintiff only "prayed for a declaration of its rights and did not seek further relief or demand monetary damages." Because the relief granted by the trial court exceeded what was requested, this court reversed that portion of the judgment awarding legal interest. "If the pleadings stipulate the supplementary relief sought, the issue is properly before the court." Fortenberry v. Dixie Brewing Co., 368 So.2d 1240, 1241 (La.App. 4th Cir.1979).
The petition of intervention filed in this proceeding by Lady Luck requested only "[t]hat each and every rule promulgated by the Louisiana Riverboat Commission which is found to be invalid, be deemed invalid and inoperative," and asked "[f]or all equitable relief." There was no demand for a refund of fees paid under those rules, should they be found invalid. The order to refund fees goes beyond "equitable relief." Considering the above, we find the trial court erred in awarding a refund of fees to Capitol House, and this portion of the judgment must be reversed.

CONCLUSION
Based on the above, this court affirms the trial court's ruling which denied the Commission's exception of no right of action. We also affirm its finding that the Commission exceeded its authority in promulgating certain of its rules and in assessing fees, and its holding that Sections 301-331 inclusive, 503-509 inclusive, 701-705 inclusive, and 717 of the Commission's rules are null, void, and without effect and that any further application *323 of them is prohibited. We reverse that portion of the judgment which ordered the refund of fees paid by Capitol House or its predecessor in interest.
AFFIRMED IN PART, REVERSED IN PART.

ATTACHMENT

No. 404,961Division H-15

19th Judicial District Court

Parish of East Baton Rouge

State of Louisiana

The State of Louisiana,

Through, The Louisiana

Riverboat Gaming Commission

v.

Louisiana State Police

Riverboat Gaming Enforcement

Division

WRITTEN REASONS FOR JUDGMENT
The Louisiana Legislature authorized the riverboat gaming industry in 1991 by enacting the Louisiana Riverboat Economic Development and Gaming Control Act, La.R.S. 4:501, et seq. (1991 Act 753). The Act created two separate and distinct administrative bodies within the Department of Public Safety and Corrections to supervise and regulate the riverboat gaming industry: the Louisiana Riverboat Gaming Commission and the Louisiana Riverboat Gaming Enforcement Division of the Louisiana State Police. Each is given various functions and powers by the Act. The Division, created by La.R.S. 4:515, is vested with regulatory and enforcement powers. It has the power to inspect gaming premises, devices, or equipment; seize or impound gaming devices for examination and inspection; examine and audit licensees' books, records, and papers; deny, limit, restrict, suspend or revoke applications for licenses, impose penalties; issue subpoenas, interrogatories, or emergency orders; and a variety of other enumerated powers (La.R.S. 4:517). Section 518 authorizes the Division to investigate an applicant's qualifications; issue, deny, condition, or restrict licenses and permits; investigate violations of the Riverboat Gaming Act; conduct hearings; require licensees to use a cashless wagering system; conduct on-sight observations to review gaming activities; and request information, materials, or other data from licensees or permittees.
The Commission is created by La.R.S. 4:510 as a rule and policy making body comprised of seven members who are appointed by the governor and confirmed by the Louisiana State Senate. It is empowered to promulgate rules for, and to determine: riverboat sailing routes, minimum insurance levels for licensees, riverboat design specifications, and procedures for negotiable instruments transactions. Additionally, Section 511 gives it oversight authority over the Division by giving it the power to hear and determine all appeals relative to licenses and the power to reject any rule or regulation proposed by the Division which it finds unacceptable.
Pursuant to the authorization of the Act, the Commission promulgated various regulations in the Louisiana Register which regulate the riverboat gaming industry. In accordance with the provisions of section 556 of the Act, the Commission has requested a declaratory judgment from this court finding the regulations valid under the Act. The Division, being made a defendant by an amended petition, seeks the same ruling. Intervening in the matter, the Capitol House Preservation Company, L.L.C. submits that certain sections of the regulations are invalid because they exceed the statutory authority of the Commission as provided in the Act. All parties agree the matter is proper for summary judgment.
Capitol House contends that the Commission has exceeded the authority granted by the Act in promulgating Sections 301-331, 503-509, 701-705, and 717. They argue that the Commission has created a device termed a "certificate" and has evaluated and chosen applicants it deemed best suited to promote the policy of the Act in awarding them. They submit that the term "certificate" is not found anywhere in the Act, and it is beyond the authority granted to the Commission to issue such. The Act only authorizes two *324 forms of regulatory approval: licenses and permits. In the definition section of the Act, license and permit are defined. "License" or "gaming license" is defined as "a license or authorization to conduct gaming activities on a riverboat issued pursuant to the provisions of this Chapter." (La.R.S. 4:504(14)) "Permit" is defined as "any permit or authorization or application therefor issued pursuant to this Chapter other than a gaming license. (La.R.S. 4:504(18)) The Act further provides that "The division shall issue ... licenses and permits." (La.R.S. 4:518(2)) [emphasis added]. Capitol House submits that these certificates are no more than a form of permit. Since the Division is the only agency authorized to issue permits or licenses, the issuance of these certificates is beyond the authority of the Commission.
The controversy occurs because the statute provides a certain division of authority, but fails to clarify the manner in which the power is to be exercised by the two agencies. Everyone agrees that the only licensing authority is the Division. However, the dispute concerns the authority granted to the Commission whereby "The commission shall promulgate rules providing for and determining..." routes of a riverboat, duration of excursions, stops the boat may make, and riverboat design specifications. (La.R.S. 4:511(2)) (emphasis added). The question which remains unanswered is how does the Commission accomplish this? While the Act mandates the promulgation of these rules, does the Commission also have the authority to determine compliance with them or is that the sole domain of the Division in the licensing process? The Commission takes the position that a riverboat operator must receive these authorizations and approvals from the Commission and argues that the Act is silent as to how the Commission is to give its authorization. Therefore, it is necessary to create some vehicle such as these certificates to implement this power. However, the Act does not mandate authorization and approval by the Commission; it only mandates promulgation of rules "providing for and determining..." various aspects of riverboat design and operation. The Commission's rules create the "certificate" process to facilitate the approval and authorization of those areas over which it has control. Any prospective operator must apply to and obtain from the Commission a "Certificate of Preliminary Approval" (Rule 303), a "Certificate of Approval of Boat Design" (Rule 305), and a "Certificate of Final Approval" (Rule 507). The Commission argues that some device is necessary to approve those items under their jurisdiction. Whether it is termed a certificate of approval, letter of approval, stamp of approval or anything else, it only evidences the authority of the Commission to approve applications for boat design, routes, duration of excursions, and stops. They submit that the court should not impose it's own construction on a statute nor conclude that an agency's construction is the only permissible one. The reviewing court should determine if the agency's construction and interpretation of the statute is a permissible reading of it; not the only permissible reading of it. Chevron v. Natural Resources Defense Council, 467 U.S. 837, 843; 104 S.Ct. 2778, 2782; 81 L.Ed.2d 694 (1984). The court agrees.
However, an administrative agency or board only has the authority expressly granted to it by statute or the constitution and cannot on its own authority enlarge the powers delegated to it by the legislature. Realty Mart, Inc. v. La. Board of Tax Appeals, [336] 316 So.2d 52 (La.App. 1st Cir., 1976); Benson and Gold Chevrolet, Inc. v. La. Motor Vehicle Commission, 403 So.2d 13 (La. 1981). The Commission can only adopt rules which are within the powers granted to it by the Act. Only those rules which fall within the limited authority granted by the Act are valid and have legal efficacy. Capitol House asserts that the Commission has usurped authority delegated to the Division in selecting applicants which it feels are best suited for a license and by creating additional requirements through the "certificate" process. The Act mandates the Commission to determine and provide for appropriate routes, appropriate lengths of excursions, and design specifications for the boats. The Commission is then mandated to promulgate the rules that it has determined and provided for. Since the Division is the only licensing *325 or permit authority, the Act contemplates that the Division will ensure compliance with the rules of the Commission. The Act does not provide any authority for the Commission to enforce the rules it adopts and promulgates. This authority is given to the Division. If the Legislature had intended to give approval and authorization power to the Commission, it certainly could have done so. They only gave the Commission the power to promulgate rules. The power to grant approval and authorization was given to the Division.
Additionally, as Capitol House argues, the rules exceed the definition in the Administrative Procedures Act, and are, in fact, an attempt to grant adjudicatory authority to the Commission. Section 519(D) of the Act provides that the Commission's rules must comply with the APA. "Rule" is defined therein as "each agency statement, guide, or requirement for conduct or action ... which has general applicability and the effect of implementing or interpreting substantive law or policy. `Rule' includes ... the criteria or qualifications for licensure or certification by an agency." La.R.S. 49:951(6) These rules pertaining to the "certificate process" do not purport to establish qualifications for applicants to receive a license from the Division. They do not implement or interpret substantive law regarding the areas in which the Commission is empowered to enact rules. Rather, they attempt to grant authority to the Commission to conduct an adjudication of applicants who are seeking a license from the Division.
The APA defines "adjudication" as the "agency process for the formulation of a decision or order. "Decision or order" is defined as "the whole or part of the final disposition of any agency, in any matter other than rulemaking." La.R.S. 49:951(1, 3) The Act grants no adjudicatory authority to the Commission. The Division is specifically granted the authority to conduct hearings and to make adjudications on the merits of individual applicants for a license. The court agrees that by adopting these rules, the Commission is exercising adjudicatory authority which it has not been given, not the rule-making authority expressly conveyed by the Act.
Even if a permissible interpretation of the Act would convey upon the Commission the authority to approve and authorize those matters found in La.R.S. 4:511(2), the implementation of these rules has to be violative of the Act. The Commission has oversight authority over the Division. This is primarily exercised as an appellate review function. The Commission takes the position that the application for certificate approval may take place in any order. Thus, the applicant can apply to the Commission first, prior to applying to the Division for a license, or may apply to the Commission for any of the various certificates after applying to the Division. Rule 301 provides: "The filing of an application under the act and these rules specifically constitutes a request for a decision upon the applicant's general suitability, reputation, character, integrity, and ability to participate or engage in or be associated with the riverboat gaming industry, and by filing an application, the applicant specifically consents to the making of such a decision by the division and commission." This authority is already encompassed in the provisions of La.R.S. 4:530 and 531. It is conferred upon the Division. By interjecting itself into the decision making process, the Commission no longer possesses the impartial objectivity necessary for an appellate review body. Having granted a Certificate of Preliminary Approval and/or Certificate of Approval of Riverboat Design, how could the Commission conduct an unbiased review of the same applicant who had been denied a license by the Division? Thus, if the certificate process is within the statutory authority of the Act, enabling the Commission to give its approval, then it has to envision the following order in the procedure. First the Division must investigate, evaluate, and select applicants for a license. Secondly, after approval and licensing of the applicant by the Division, the licensee would then apply to the Commission for approval of its route, duration of cruise and stops, boat design, and other matters. The Act expressly provides the Commission with appellate review authority. The certificate process is one created by the Commission's rules as an adjunct to its perceived *326 power. If either must be abrogated because of a conflict, it must be that created by the rules.
Whatever statutory and regulatory scheme is implemented by the two agencies, it is imperative that there be a high level of trust and faith by the public and those engaged in the gaming business. It is generally conceded that the intent of the Legislature in the Act was to give the licensing power and authority to the State Police, an agency with a high level of public trust and confidence. The authority was specifically delegated to them rather than the Commission which is a political body appointed by the Governor. It was thought that this would provide a measure of public trust and confidence. Thus, if for no other reason than this, the Commission should be extremely careful in implementing its rules, ensuring that there is no appearance of conflict with the authority vested in the Division. It is interesting to note that there were 43 applicants with the Commission for a certificate of preliminary approval. Of these, the Commission issued 15. It could have issued more or less, but chose to issue 15. Coincidentally, this is the same number as provided in the Act for the available licenses. Again, coincidentally, the Division issued the 15 available licenses to the same 15 applicants who had been previously issued preliminary certificates of approval by the Commission. The Commission steadfastly insists that the two processes are totally independent of each other and have no effect on each other. However, the fact remains that 15 out of 43 applicants were issued preliminary certificates of approval and the same 15 were later issued licenses. Is there any wonder that Capitol House has little faith in the process?
In adopting the certificate process, the Commission has imposed certain fees upon the applicants. Rule 303(A)(6) provides for a $30,000.00 filing fee in applying for a certificate of preliminary approval; $25,000.00 for the application itself, and $5,000.00 for costs and expenses in analyzing and evaluating the application. Rule 305(E) imposes a charge of $25,000.00 filing fee for applying for a certificate of approval of riverboat design. Nothing in the Act provides for a fee to be paid to the Commission or gives the Commission the authority to charge any type of fee. La.R.S. 4:532 and 550 provide for an initial application fee of $50,000.00, and, if necessary, another $50,000.00 to be paid to the Division by applicants for a license. Additionally, these sections provide for various enumerated fees to be paid by applicants for certain permits issued by the Division. Section 551(A) states "The division shall collect all fees and fines assessed under the provisions of this Chapter and under the rules and regulations of the division." State agencies may not charge fees unless specifically authorized by statute. They certainly may not do so through a rule-making function or authority. The APA excludes from the definition of a "rule" any agency statements, guides, or requirements for conduct or action "purporting to adopt, increase, or decrease any fees imposed on the affairs, actions, or persons regulated by the agency." La.R.S. 49:951(6). Further, the APA provides that "This Act shall not be construed as to empower any state agency the authority to raise fees or to expand or broaden their specific statutory authority." 1987 Act 240, Section 2. Therefore, the Commission has clearly exceeded its authority under the Act in levying these application and filing fees.
Therefore, the court finds that the Commission has exceeded its authority as granted in the Act. The Commission is given the authority enact rules and promulgate them. They have no authority to enforce these rules nor grant any authorizations nor approvals within these rules. Even if they have the power to accept applications for routes, boat design, etc. the Commission has overstepped its authority in the manner of granting these approvals. They should act only after the Division has granted a license to an operator. The Commission has also exceeded its authority by imposing fees. There is no authorization for the Commission to impose or collect any fees, whatever.
For these reasons, the court finds La.R.S. 4:301 through 331 inclusive, 503 through 509 inclusive, 701-705 inclusive, and 717 to be null, void, and without effect and prohibits any further application of them. Further, *327 the court finds that any fees paid by Capitol House Preservation Company, L.L.C. or its predecessor in interest are to be refunded to them.
Baton Rouge, Louisiana, this 28th day of September, 1995.
 /s/ J. Michael McDonald
 J. Michael McDonald
 Judge, 19th Judicial
 District Court

JUDGMENT
This matter came on for hearing pursuant to regular assignment. Present in court were Charles S. Lambert, Jr., for intervener, Capitol House Preservation Company, L.L.C. and Jenifer Schaye and Thomas A. Warner III for The Louisiana Riverboat Gaming Commission. For the reasons assigned in the Court's Written Reasons For Judgment, dated September 28, 1995;
IT IS ORDERED ADJUDGED AND DECREED that:
I. Sections 301 though 331 inclusive, Sections 503 through 509 inclusive, Sections 701-705 inclusive, and Section 717 of the Rules of the Louisiana Riverboat Gaming Commission are null, void, and without effect and any further application of them is prohibited; and
II. Any fees paid by Capitol House Preservation Company, L.L.C. or its predecessor in interest are to be refunded to them.
RENDERED AND SIGNED at Baton Rouge, Louisiana, this 5th day of October, 1995.
 /s/ J. Michael McDonald
 J. Michael McDonald
 Judge, 19th Judicial
 District Court
Approved as to form and content:
________________________
Charles S. Lambert, Jr.
 /s/ Jenifer Schaye
 Jenifer Schaye
NOTES
[1] See In re Louisiana Riverboat Gaming Commission, 94-0996 (La.App. 1st Cir. 1/27/95), 659 So.2d 775, writ denied, 95-1005 (La. 6/2/95), 660 So.2d 436.
[2] We discuss these developments simply to clarify that, as a result of these rulings, the many applicants whom the District Attorney attempted to bring into the case are no longer included in this litigation unless they have made a formal appearance.
[3] The Division did not appeal the court's denial of its exception of no cause of action.
[4] We note the court's written reasons incorrectly designated these rules as revised statutes. In the judgment rendered and signed October 5, 1995, the court correctly described the sections as follows:

Sections 301 through 331 inclusive, Sections 503 through 509 inclusive, Sections 701-705 inclusive, and Section 717 of the Rules of the Louisiana Riverboat Gaming Commission are null, void, and without effect and any further application of them is prohibited....
[5] Section 31 of the Gaming Control Law states, in pertinent part:

A. (1) Beginning May 1, 1996, the board established in this Title shall undertake and become the sole and exclusive regulatory and supervisory board for gaming operations and activities authorized by the Louisiana Riverboat Economic Development and Gaming Control Act.... The board created in this Title shall be the successor to any board of directors, president, board, commission, or committee established prior to May 1, 1996, to regulate gaming under such laws as well as successor to any authority heretofore granted to any other office or division within the Department of Public Safety and Corrections or any other state department or agency, except as otherwise specifically provided herein.
(2) Effective May 1, 1996, the Riverboat Gaming Commission is abolished.
Section 19 of the Gaming Control Law states, in pertinent part:
A. The attorney general or his designee shall be the legal advisor and legal representative to the board, chairman, and office of state police relative to all gaming matters under the board's jurisdiction, and in all legal proceedings.
[6] To maintain continuity in the case reporting, we have not re-designated the caption of this suit.
[7] In a separate proceeding, Capitol House appealed the Commission's decision to deny Lady Luck a certificate of preliminary approval. The petition in that case also requested a declaratory judgment on the validity of the Commission's regulations. The trial court there ruled Capitol House had no right of action and Capitol House appealed to this court. The case is scheduled for oral arguments on September 25, 1996. See Capitol House Preservation, L.L.C. v. Louisiana Riverboat Gaming Commission, 96-CA-0446, on appeal from the Nineteenth Judicial District Court, Parish of East Baton Rouge, Louisiana, Docket No. 414,669.
[8] LSA-R.S. 49:950 et seq. Under the pertinent provisions of § 963, a party seeking a declaratory judgment must show that review of the validity and applicability of the rule in conjunction with review of a final agency decision in a contested adjudicated case would not provide an adequate remedy and would inflict irreparable injury.
[9] This declaratory judgment action was brought pursuant to LSA-R.S. 4:556(A), which states:

The division or the commission may obtain a judicial determination of any question of construction or validity of a provision of this Chapter or any rule or regulation of the division or commission by bringing an action for a declaratory judgment in the Nineteenth Judicial District Court in accordance with the provisions of the Louisiana Code of Civil Procedure.
[10] LSA-C.C.P. arts. 1871 et seq. govern declaratory judgment actions.