_JjFOGG, J.
By this appeal, the Hospital Service District No. 1 of Tangipahoa Parish d/b/a North Oaks Medical Center challenges the determination that it has violated LSA-R.S. 37:2160(A)(1) by acting as a contractor without a license in the construction of additions and renovations to the North Oaks Medical Center. For the following reasons, we affirm.
*1111 This dispute arises out of the ongoing construction of additions and renovations to the North Oaks Medical Center in Hammond, Louisiana, which is owned, managed and operated by the Hospital Service District No. 1 of Tangipahoa Parish d/b/a North Oaks Medical Center (the Hospital). The project involves a 250,000 square foot addition to the existing Medical Center facility, the construction of a new medical office building and renovations to certain parts of the Medical Center’s existing buildings.
The construction of the project was divided into approximately twelve separate trade packages which were competitively bid in accordance with the applicable provisions of the Louisiana Public Bid Law, LSA-R.S. 38:2181 et seq. Contracts were then awarded and entered into between the Hospital and the low bidders for each of the twelve packages. Each of these contractors was required by the bid documents to hold a current and valid contractor’s license issued by the Louisiana State Licensing Board for Contractors in the appropriate classification.
The bid packages covered several different building trade categories, including electrical, fire sprinkler system installation, site work, auger cast piling, plumbing and HVAC, general trades, elevators, drywall, finish carpentry, millwork and pre-manufactured casework, acoustical work, and resilient flooring and carpet.
bThe Hospital contracted with Centex-Rodgers Construction Company (Centex) to serve as its construction manager to assist in the planning, development and construction of the project. Centex was contractually responsible for coordinating and scheduling the work of all contractors and determining in general if the work of the contractors was being performed in accordance with the requirements of the plans and specifications. It was not responsible for the means, techniques or procedures used by the contractors to perform their respective work and was not financially responsible for the work to be performed by the separate contractors. Centex did hold at the time, and still holds, a current and valid contractor’s license issued by the Licensing Board.
Once this multiple prime contractors/construction manager approach to constructing the project was finalized, the Hospital met with the Licensing Board to discuss the project. Subsequently, the Board sent a certified letter to the Hospital requesting that it appear at an administrative hearing at the Board’s offices and issued a subpoena for the Hospital to produce certain records and documents. An administrative hearing was convened on February 20, 1997 to consider an alleged violation of LSA-R.S. 37:2160 and 2162. The Board found that the actions of the Hospital were in violation of LSA-R.S. 37:2160(A)(1) in not hiring a general contractor; the Board declined to subject the Hospital to penalties under LSA-R.S. 37:2162.[1] Pursuant to LSA-R.S. 49:964, the Hospital sought judicial review of the matter in the Nineteenth Judicial District Court, where the judge upheld the decision of the Licensing Board. This appeal followed.
bThe record reflects that the Licensing Board made the following findings of fact and conclusions of law:

FINDINGS OF FACT:

(1) North Oaks Medical Center, a public entity, after competitive bidding as required by law, entered into at least 12 separate contracts with individual licensed Contractors to build a $24,000,000 plus addition to facilities owned by them in Hammond, Louisiana.
(2) North Oaks Medical Center, entered into a Construction Manager Contract with a licensed Contractor, Centex-Rodgers Construction Company, on the same job.
(3) The Centex-Rodgers Construction Manager Contract at Section 1.2.7.1, specified “The Construction Manager shall not be responsible for construction means, methods, techniques, sequences and procedures employed by Contractors in the performance of their contracts, and shall not be responsible for the failure of any Contractor to carry out work in accordance with the contract documents.”
*1112 (4) The Board found that there was no “General Contractor” or “Primary Contractor” on the job to coordinate the work of the various “Trade Contractors” and no “General Contractor” or “Primary Contractor” on the job with responsibility for the work of any of the separate “Trade Contractors” and that therefore North Oaks Medical Center, as Owner, was improperly acting as an unlicensed Contractor on the job in violation of the rules and regulations and statutes of Louisiana with regard to such activities.

CONCLUSIONS OF LAW:

(1) North Oaks Medical Center under Title 37:2150.1(4) is acting as a “Contractor[,]” as Owner, without a license and therefore in violation of Title 37:2160, Section A(l) and also subject to the provisions contained in Title 37:2162 for such violation.
Judicial review of a decision of an administrative governmental agency is set forth in LSA-R.S. 49:964. The Administrative Procedure Act specifies that judicial review shall be confined to the record, as developed in the administrative proceedings. LSA-R.S. 49:964(F). The district court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions feare: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency’s statutory authority; (3) made upon unlawful procedure; (4) affected by error of law; (5) arbitrary, capricious, or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. LSA-R.S. 49:964(G); Pacificorp Capital, Inc. v. State, Through Div. of Admin., 92-1729 (La.App. 1 Cir. 8/11/94); 647 So.2d 1122, writ denied, 94-2315 (La.11/18/94); 646 So.2d 387.[2] On legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a de novo review of questions of law and renders judgment on the record. State, Through Louisiana Riverboat Gaming Comm’n v. Louisiana State Police Riverboat Gaming Enforcement Div., 95-2355 (La.App. 1 Cir. 8/21/96); 694 So.2d 316.
On appeal, the Hospital contends the district court and the Licensing Board erred in concluding that, under LSA-R.S. 37:2160(A)(1) and 2162, the Hospital was acting as a “contractor” without a valid and current contractor’s license. The Hospital contends that, rather than hire one general contractor, it hired many general contractors each of whom performed a distinct function, the cost of which exceeds the statutory minimum of $50,000.00, and each of whom held a valid contractor’s license in the appropriate classification.
LSA-R.S. 37:2160(A)(1) provides that “[i]t shall be unlawful for any person to engage or to continue in this state ^in the business of contracting, or to act as a contractor as defined in this Chapter, without having qualified as a contractor under the provisions of this Chapter.” At the pertinent time, LSA-R.S. 37:2150.1(4) defined the term “contractor” as follows:[3]
“Contractor” means any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the en *1113 tire cost of same is fifty thousand dollars or more when such property is to be used for commercial purposes other than a single residential duplex, a single residential triplex, or a single residential fourplex. A construction project which consists of construction of more than two single residential homes, or more than one single residential duplex, triplex, or fourplex, shall be deemed to be a commercial undertaking. The term “contractor” includes general contractors, subcontractors, architects, and engineers who receive an additional fee for the employment or direction of labor, or any other work beyond the normal architectural or engineering services. A contractor holding a license in the major classification of Hazardous Materials, or any subclassifications thereunder, shall be defined in terms of work performed for which the cost is one dollar or more.
In the instant case, the record amply supports the factual findings and conclusions of the agency. The record shows that Centex acquired all the responsibilities of a general contractor except the responsibility for the actual work done under each trade package. By the terms of its contract with the Hospital, it was not responsible for any failure by the various contractors. This is further evidenced by the testimony of the on-site project manager for Centex, Monnie Wood. When asked the nature of his authority, Wood testified that he did not have the ^authority to stop work or direct a contractor on how to complete a particular task. He could only point a mistake out and recommend what should be done to correct the mistake. The absence of authority or responsibility clearly shows that Centex was not the general contractor of this project.
Each trade contractor contracted directly with the Hospital. No licensed general contractor with supervisory authority for the entire project was hired. Rather, the Hospital acted as the general contractor of this construction project because it entered into at least twelve contracts and remained in charge of the construction project, supervising and overseeing the work. However, the Hospital does not have a license to engage in the construction business in this state. Thus, the agency correctly determined as a matter of law that the Hospital’s actions were in violation of LSA-R.S. 37:2160(A)(1).
For the foregoing reasons, the judgment of the district court upholding the decision of the Board is affirmed. Costs are assessed against Hospital Service District No. 1 of Tangipahoa Parish d/b/a/ North Oaks Medical Center.
AFFIRMED.
PARRO, J., concurs.

. LSA-R.S. 37:2162(A) provides for a civil penalty for violation of LSA-R.S. 37:2160(A)(1) in the form of a fine of up to one thousand dollars plus costs and attorney fees.

. Although the Paeificorp case refers to the "manifest error” standard of review, LSA-R.S. 49:964(G)(6) was amended in 1997 to allow reversal or modification if the administrative findings are not supported and sustainable by a preponderance of evidence. 1997 La. Acts Ño. 128, § 1. The Act also designated this amendment as a procedural change and made it applicable to all pending cases. 1997 La. Acts No. 128, § 2.

. LSA-R.S. 37:2150.1(4) was amended by 1997 La. Acts. No. 146, § 1.