Dear Mr. Spruell:
On behalf of the Calcasieu Parish School Board (Board), you have requested the opinion of this office on the following issues:
 A. May a public body enter into a construction management agreement without publicly bidding the contract for services as a construction manager?
 B. May a public works project, under a construction management agreement, be divided into separate trade packages, with each trade package being competitively bid when required by the Public Bid Law, without violating R.S. 38:2212H?
 C. Does a construction management agreement, which provides that the construction manager will supervise, control, approve payments and have the right to terminate the contractors on a project, comply with the Louisiana Contractors' Licensing Law?
You indicate that the Board is considering entering into a construction management agreement with a licensed contractor (Construction Manager) to oversee construction projects on properties owned by the Board. The Construction Manager would not do any actual construction but would oversee separate trade contracts which would be competitively awarded as required by the Public Bid Law. The construction management agreement would require that the Construction Manager assist the Board and its agents in developing bid documents, evaluation of bids and overseeing, directing and coordinating the individual duly licensed and bonded trade contractors selected and awarded contracts by the Board. As agent for the Board, the Construction Manager could terminate a contractor for good cause.
SELECTION OF THE CONSTRUCTION MANAGER
The proposed contract with a Construction Manager is one for services. It has long been held by our courts that contracts for services are not subject to the Public Bid Law. Wallace Stevens, Inc. v. LaFourche ParishHospital District No. 3, 323 So.2d 794 (La. 1975); Browning-Ferris, Inc.v. City of Monroe, 465 So.2d 882 (La.App. 2d Cir. 1985); Lafourche ParishWater District No. 1 v. Carl Heck Engineers, Inc., 346 So.2d 769
(La.App. 1st Cir. 1977). The proposed contract for Construction Management services falls within the ambit of these holdings and therefore need not be bid, although public bidding or a request for proposals may be used in the selection process.
CONSTRUCTION MANAGER'S RESPONSIBILITIES
Your opinion request details extensive responsibilities which the Board, as owner, would delegate to the Construction Manager as the authorized agent of the Board to carry out these responsibilities. We find no problem with this arrangement, except to point out that many of the delegated responsibilities fall within the definition of "contractor" set forth in R.S. 37:2150.1 and therefore would require that the Construction Manager contracted by the Board be a licensed general contractor as required by the Contractors Licensing Law.
Even in the more familiar owner/architect/general contractor/sub-contractor arrangement the owner delegates its responsibilities to one of these as its agent, usually the architect and general contractor. Interposing a Construction Manager and delegating oversight and management decision making to that party is no problem under the law.
The contractual arrangement proposed between the Board and the Construction Manager avoids the deficiency found by the court in HospitalService District No. 1 of Tangipahoa Parish v. Louisiana State LicensingBoard for Contractors, 723 So.2d 1110 (La.App. 1 Cir. 12/28/1998). There, the construction manager was found not to have authority over, or responsibility for, the performance of the various trade contractors, thereby leaving the hospital/owner with the role of general contractor, but unlicensed as such. The proposed contract you describe in your request gives the Construction Manager authority to supervise, approve or reject the work of the trade contractors and the right to terminate such contractors should their performance be unacceptable. This arrangement appears to meet the test established by the jurisprudence.
COMPLIANCE WITH LSA-R.S. 38:2212H
Under the Public Bid Law, contracts for public works costing $100,000 or more must be advertised and let by contract to the lowest responsible and responsive bidder. Public works means the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity. LSA-R.S. 38:2212(1)(a) (d) and 38:2211(11).
LSA-R.S. 38:2212(H) states that "Under no circumstances shall there be a division or separation of any public work project into smaller projects which division or separation would have the effect of avoiding the requirement that public work be advertised and let by contract to the lowest responsible bidder as provided in this Section." The Board asks if a public works project, subject to a construction management agreement, can be divided into separate trade packages, with each trade package being competitively bid when required by the Public Bid Law, without violating LSA-R.S. 38:2212H.
It is our opinion that should the public works project, taken as a whole, equal or exceed the statutory contact limits of $100,000, then each and every trade package or contract relating to the particular project must comply with the advertising and bidding requirements of the Public Bid Law. The separate trade packages cannot be evaluated as a separate and distinct project within a project for purposes of complying with the Public Bid Law. To do otherwise would be a clear violation of R.S. 38:2212H.
COMPLIANCE WITH CONTRACTORS' LICENSING LAW
As indicated above, the person contracted as Construction Manager would necessarily be licensed by the Contractors' Licensing Board for "building construction" under R.S. 37:2156.1, the closest major classification to what is generally known as the "general contractor" which is defined by R.S. 37:2150.1(6) as "a person who contracts directly with the owner." R.S. 37:2156.2 which lists the numerous cub-classifications which exist under the broad category of "building construction" contains no prohibition on those licensed in these sub-classifications from contracting directly with the owner, in this case the Board. We find no authority in the Contractors Licensing Law which would prohibit or restrict the Board from rearranging contractual responsibilities in the manner proposed.
I trust that this answers your inquiries. Please let me know if you need additional information or guidance on this issue.
Very truly yours,
 RICHARD P. IEYOUP Attorney General
 BY: _____________________________ RICHARD L. MCGIMSEY Assistant Attorney General
RPI/RLM/dam