PARRO, J.
| aThe Plaquemines Parish Government, on behalf of and as the governing authority of the Grand Prairie Levee District (GPLD), filed a petition for judicial review of a final decision by the Department of Natural Resources (DNR) concerning the return of public lands in the area of the Bohemia Spillway in Plaquemines Parish to the GPLD, a prior owner. The district court sustained DNR’s peremptory exception raising the objection of no cause of action, and from that judgment, the Plaquemines Parish Government appeals. For the following reasons, we affirm.

Factual and Procedural Background

According to the GPLD, in the mid-1920s, the Orleans Levee District (OLD) acquired thousands of acres of land in Plaquemines Parish from it for the construction of the Bohemia Spillway. This land has produced millions of dollars in mineral revenues. The GPLD sought to have the DNR certify it as the prior landowner in order to facilitate the return of the now-unused land to the GPLD. However, the DNR refused to determine certification based on its conclusion that a legislative resolution was needed for the return of land from one quasi-governmental entity to another. The GPLD disagreed and filed a petition for judicial review, seeking the reversal of the DNR’s decision and seeking certification that the GPLD was the previous landowner. The GPLD urged that the DNR is statutorily obligated to certify ownership. The GPLD asserted that once its ownership of the property was certified, section 1 of 1984 La. Acts, No. 233 (Act 233) required that the land be returned to the GPLD.
In response to the GPLD’s petition for judicial review, the DNR filed an exception raising the objections of no right of action and no cause of action.[1] The district court sustained the DNR’s objection of no cause of action and dismissed the GPLD’s petition based on a finding that Act 233 does not require the return of public lands. The GPLD appealed, contending the district court erred in finding that (1) Act 233 applied only to | ^private landowners, (2) there can be no expropriation of public lands, and (3) the GPLD was not an existing entity.

Applicable Legislation

The creation of the GPLD and the transfer of public land from the Parish of Plaquemines to the GPLD was provided for in 1898 La. Acts, No. 24. The lower boundary of the GPLD was extended by 1900 La. Acts, No. 43. Subsequently, 1924 La. Acts, No. 99 (Act 99) gave the Board of Levee Commissioners of the OLD authority to acquire property, either by purchase, donation, or expropriation, for the purpose of creating the Bohemia Spillway *359 in Plaquemines Parish.[2] Bd. of Com’rs of Orleans Levee Dist. v. Dept. of Natural Resources, 496 So.2d 281, 285 (La.1986); Frank v. Bd. of Levee Com’rs of Orleans Levee Dist., 04-0858 (La.App. 4th Cir.4/6/05), 900 So.2d 1063, 1064, writ denied, 05-1171 (La.11/28/05), 916 So.2d 144. Section 3 of Act 99 provided:
The Orleans Levee District is hereby required, as a condition precedent to removing any levees or taking possession of any property, to acquire by purchase or expropriation and to pay for all lands and property privately owned within the area covered by the proposed plan from the upper to the lower limits thereof and from the Mississippi River to the sea.
The legislature also authorized the OLD to levy such taxes as may be required for the purpose of constructing the Bohemia Spillway. Bd. of Com’rs of Orleans Levee Dist. v. Dept. of Natural Resources, 496 So.2d at 285. Pursuant to this authority, the OLD acquired the properties necessary for construction of the spillway. The court in Bd. of Com’rs of Orleans Levee Dist. v. Dept. of Natural Resources stated:
Although located in Plaquemines Parish 50 miles [downriver] from Orleans Parish, on the site of what was formerly the Bohemia Plantation, the spillway was designed to assist in protecting the City of New Orleans from flooding by providing a rapid exit for surplus water from the Mississippi River into the Gulf of Mexico, thereby reducing the water level upstream. Of the 33,000 acres required for the creation of the spillway, which was constructed in 1924 to 1926, 3% of the land was acquired by expropriation, 48% by purchase in lieu of expropriation, and 49% by transfer of public lands from the state. The transfer of public lands was accomplished by Acts 246 of 1928 and 311 of 1942, whereby the Legislature conveyed to the Orleans Levee District from the 14Grand Prairie Levee District all of the state or public land in the spillway. Id.
Portions of Act 24 of 1898 were amended and re-enacted by 1928 La. Acts, No. 246, which recreated and re-established the GPLD, reducing its size by moving its upper boundary southward. This size reduction removed approximately 11 miles of public lands between the lower line of the Bohemia Plantation and the Cuselich Canal from the GPLD’s original territorial boundaries. See Richardson & Bass v. Bd. of Levee Com’rs of Orleans Levee Dist., 231 La. 299, 307-08, 91 So.2d 353, 356-57 (1955), dismissed sub nom. Pottharst v. Richardson & Bass, 352 U.S. 948, 77 S.Ct. 325, 1 L.Ed.2d 241 (1956). The right, title, ownership, and possession of the OLD to all public lands in the area of the Bohemia Spillway in Plaquemines Parish were confirmed, quieted, and acknowledged by 1942 La. Acts, No. 311, § 1 (Act 311), which was referred to by the court in Richardson & Bass, 91 So.2d at 358 n. 5, as being a legislative conveyance, vesting title in the OLD without necessity of a formal act of conveyance.[3]
In 1983, LSA-Const. art. VII, § 14(B) was amended[4] to authorize the *360 return of property, including mineral rights, to a former owner from whom the property had previously been expropriated, or purchased under threat of expropriation, when the legislature by law declares that the public and necessary purpose that originally supported the expropriation had ceased to exist and orders the return of the property to the former owner under such terms and conditions as specified by the legislature. See LSA-Const. art. VII, § 14(B)(4). This amendment provided an exception to the prohibition regarding the donation of public property. Pursuant to this constitutional amendment, the legislature enacted 1984 La. Acts, No. 233 (Act 233), which declared that the public and necessary purpose that may have originally supported the ^expropriation of certain property in Plaquemines Parish for the construction of the Bohemia Spillway had ceased to exist, and ordered the OLD to return the ownership of the property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation. Section 2 of Act 233 vested rule-making and procedure-making authority in the DNR to establish procedures and guidelines for the return of such property by the OLD and ordered it to evaluate applications submitted by former owners or putative heirs.[5] See Bd. of Com’rs of Orleans Levee Dist. v. Dept. of Natural Resources, 496 So.2d at 286; see also Frank, 900 So.2d at 1065. The secretary of the DNR was made responsible for certifying owners or successors to owners from whom such property was so acquired. See 1985 La. Acts, No. 819, § 4 (amending section 4 of Act 233 of 1984). The legislation authorized the attorney general to file all pleadings necessary to claim lands on behalf of the state that had been ceded to the OLD. See 1997 La. Acts, No. 1364, §§ 2 and 3, which further amended and reenacted section 1 of Act 233 of 1984.[6]

Discussion

Article VII, § 14(A) of the Louisiana Constitution provides that “the funds, credit, property, or things of value of the state or any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.” The purpose of this constitutional provision is to protect the electorate from the possibility that a politically powerful individual or interest group could importune the legislature or other governmental entity into making a donation of assets of the state. In re Members of Class of Descendants of Former Owners of Cheniere Ronquillo, 01-1548 (La. App. 4th Cir.4/24/02), 817 So.2d 324, 327, writs denied, 02-1448 and 02 — 1454fi (La.9/20/02), 825 So.2d 1170 and 1171. However, the prohibition against the donation of property of the state or of any political subdivision to any person, association, or corporation is subject to certain enumerated exceptions. One of those enumerated exceptions is provided in LSA-Const. art. VII, § 14(B), as follows:
*361 Nothing in this Section shall prevent ... (4) the return of property, including mineral rights, to a former owner from whom the property had previously been expropriated, or purchased under threat of expropriation, when the legislature by law declares that the public and necessary purpose which originally supported the expropriation has ceased to exist and orders the return of the property to the former owner under such terms and conditions as specified by the legislature ....
Under the clear wording of this constitutional provision, the state is authorized to return its property to a former owner if certain requirements have been met. First, the legislature by law must declare that the public and necessary purpose which originally supported the expropriation has ceased to exist and order the return of the property. Second, the property, including mineral rights, must have previously been expropriated or purchased under threat of expropriation.
Pursuant to the authority of LSA-Const. art. VII, § 14(B), section 1 of Act 233 states:
[T]he Legislature of Louisiana hereby declares that the public and necessary purpose set forth in Act No. 99 of 1924, which may have originally supported the expropriation of property, or any right of ownership thereto, on the east bank of the Mississippi River in the parish of Plaquemines for the construction of a spillway, known as the Bohemia Spillway, has ceased to exist insofar as it ever may have affected the ownership of property, including mineral rights. The Legislature of Louisiana hereby orders the Board of Levee Commissioners of the Orleans Levee District, the board, to return the ownership of said property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation.... [Emphasis added.]
Therefore, pursuant to the provisions of LSA-Const. art. VII, § 14(B)(4), as well as the provisions of Act 233 as amended, the GPLD has no claim for return of the land unless it was acquired through expropriation or by purchase under threat of expropriation. See In re Members of Class of Descendants of Former Owners of Cheniere Ronquillo, 817 So.2d at 327.
|7The public property in question had initially been transferred from Plaque-mines Parish to the GPLD pursuant to legislative acts. Act 99 of 1924 gave the OLD the power to acquire the Bohemia Spillway property by purchase, donation, or expropriation. Approximately 51 percent of the acreage acquired by the OLD was acquired by expropriation or by purchase under threat of expropriation. See Bd. of Com’rs of Orleans Levee Dist. v. Dept. of Natural Resources, 496 So.2d at 285. The remaining 49 percent was acquired by transfer of public lands from the state pursuant to Act 246 of 1928 and Act 311 of 1942, whereby the legislature conveyed all of the state or public land in the spillway to the OLD from the GPLD. See Id.
Because the land was acquired by the OLD from the GPLD through the actions of state officials pursuant to acts of the legislature, the OLD’s acquisition of this land was not affected by means traditionally associated with expropriation.[7] See In *362 re Members of Class of Descendants of Former Owners of Cheniere Ronquillo, 817 So.2d at 327-29; cf. Angelo v. Ales, 94-0320 (La.App. 1st Cir.12/22/94), 649 So.2d 1042, 1044, writ denied, 95-0176 (La.3/17/95), 651 So.2d 274; Bd. of Com’rs of Orleans Levee Dist. v. Gomez, 621 So.2d 826, 833-34 (La.App. 1st Cir.1992), amended on reh’g, 621 So.2d 837 (La.App. 1st Cir.), writ denied, 623 So.2d 1282 (La.1993). Consequently, the exception enumerated in LSA-Const. art. VII, § 14(B)(4) does not apply, and the GPLD has no cause of action for the return of the subject property.

Decree

For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed to Plaquemines Parish Government.
AFFIRMED.

. The Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East and OLD intervened to join the DNR in opposing the GPLD's petition.

. See also section 5 of Act 99.

. Both the OLD and the GPLD are creatures or agencies of the state, and, as to such agencies, it is the inherent right of the state to abrogate, rescind, and nullify any grant of title to land made by it to one of the districts and to vest complete title thereto in the other. Richardson & Bass, 91 So.2d at 372 (on second reh’g).

.Pursuant to 1983 La. Acts, No. 729, § 2, a proposal to amend paragraph (B) was submitted to the electors of the state of Louisiana and ratified by them on October 22, 1983. *360 The amendment was effective on November 23, 1983.

. The constitutionality of Act 233 was upheld in Bd. of Com’rs of the Orleans Levee Dist. v. Dept. of Natural Resources, 496 So.2d at 287-99.

. Section 2 of Act 1364 of 1997 included the following provision:
The [OLD] shall return to the owners and/or the successors of the owners of such property an amount equal to all revenues produced since June 29, 1984 until paid from property which was acquired by the board by expropriation or by purchase under threat of expropriation....

. The references to expropriation or by purchase under threat thereof in Act 233 of 1984, Act 1364 of 1997, and LSA-Const. art. VII, § 14(B)(4) demonstrate the awareness of the legislature of the constitutional limitations on the legislature's ability to return property to private owners. See In re Members of Class of *362 Descendants of Fortner Owners of Cheniere Ronquillo, 817 So.2d at 327-28.